IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 13-cv-01512-LTB

GINA L. CASSARES,

      Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

      Defendant.
_____

ORDER
_____

      Plaintiff Gina L. Cassares appeals Defendant's (the "Commissioner") final administrative decision denying her claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I affirm the Commissioner's decision.

## I. Statement of the Case

      A hearing on Plaintiff's claim was held before an administrative law judge (the "ALJ") on February 25, 2013. On March 5, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's March 5, 2013 decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II. Statement of Facts

## A. Background

Plaintiff was born on August 25, 1964, making her 47 years old at the time of her alleged disability onset date of August 26, 2011. Administrative Record ("AR") 148. Plaintiff has the equivalency of a high school education and has worked in the past as a certified nursing assistant and housekeeper but has not been employed since November of 2008. AR 180-1. Plaintiff alleged disability due to depression, post-traumatic stress disorder, social anxiety, agoraphobia, and back problems. AR 180.

## B. Relevant Medical Evidence

In September of 2011, Plaintiff was evaluated by Elizabeth Richards, a licensed clinical social worker. AR 245-8. Ms. Richards diagnosed Plaintiff with a mood disorder "not otherwise specified," noted that Plaintiff had a reported a history of post-traumatic stress disorder, and assessed Plaintiff with a GAF score of 45-50. AR 247. Ms. Richards opined that Plaintiff would benefit from inpatient psychiatric placement to stabilize her medications but that there was no basis to place her on an involuntary mental health hold. AR 247-8.

In October of 2011, Plaintiff was examined by Jose G. Vega, Ph.D. AR 294-5. Dr. Vega reported that Plaintiff was oriented as to time, place, person, and situation and presented herself in an "extremely histrionic fashion." AR 294. Dr. Vega diagnosed Plaintiff with recurrent and moderate-to-severe levels of major depression and chronic post-traumatic stress disorder. AR 295. Shortly thereafter, Dr. Vega completed a Med-9 Form on which he indicated that Plaintiff was totally and permanently disabled and unable to work at any job. AR 311. Dr. Vega's reiterated this same opinion on a Med-9 Form he completed in October of 2012. AR 310.

In December of 2011, Plaintiff was examined by Brett Valette, Ph.D. Ar 249-51. Dr.

Valette diagnosed Plaintiff with major depression and chronic pain, noted a history of "cerebral vascular accident," and assessed Plaintiff with a GAF score of 45-50. AR 251. Dr. Valette opined that Plaintiff likely had mild impairments in memory, mild-to-moderate impairments in concentration and persistence, and moderate impairments in social interaction. *Id.* Dr. Valette further opined that Plaintiff had work limitations of being easily overwhelmed with complex tasks and an inability to multitask; that her attendance would be impacted by her depression and pain; and that working a normal day would probably be overwhelming for her. *Id.*

Mark Suyeishi, Psy.D., a non-examining State agency psychologist, reviewed the record in December of 2011 and opined that Plaintiff was capable of performing work needing little or no judgment and involving simple duties that could be learned on the job in a short period of time. AR 73. Dr. Suyeishi further opined that Plaintiff could relate to co-workers if contact was not frequent or prolonged and should only have minimal interaction with the general public. *Id.*

In January of 2012, Plaintiff was examined by Lauren Davis, D.O. AR 260-5. Dr. Davis diagnosed Plaintiff with depression, anxiety, post-traumatic stress disorder, and chronic pain. AR 265. Dr. Davis noted that Plaintiff had "significant psychiatric disease" and that her psychiatric illnesses were playing a large part in her chronic pain. *Id.* Dr. Davis opined that there were no limitations in the number of hours Plaintiff could stand, walk, or sit during an 8-hour workday; that Plaintiff would have occasional postural difficulties with bending, squatting, crouching, and stooping; and that Plaintiff could frequently lift or carry 20 pounds frequently and 30 pounds occasionally. *Id.* Dr. Davis recommended that Plaintiff have an official psychiatric evaluation "given [her] severe psychiatric diseases." *Id.*

John Hardy, M.D., provided mental health treatment to Plaintiff beginning in August of

2012.  AR 279-86.  Dr. Hardy diagnosed Plaintiff with post-traumatic stress disorder and assessed her with a GAF score of 51.  AR 285.  In October of 2012, Dr. Hardy noted that "[Plaintiff] makes reference to looking for disability, now a common theme that suggests her motivations are complex and casts a pall upon my confidence that she will clinically 'respond.'"  AR 279.

John Harder, a licensed clinical social worker, also provided mental health treatment to Plaintiff in the latter part of 2012.  AR 287-92.  Mr. Harder completed a Residual Functional Capacity Evaluation (Mental) for Plaintiff and indicated that Plaintiff could occasionally understand and remember directions and avoid distraction by others; seldom carry out instructions, perform activities within a schedule, maintain regular attendance, interact appropriately with the general pubic, accept instructions; respond appropriately to criticism from supervisors, get along with coworkers, and respond appropriately to change; and rarely maintain attention and concentration for extended periods, complete a normal workday and work week, and perform at a consistent pace without an unreasonable number or length of rest periods.  AR 318-9.  Mr. Harder also opined that Plaintiff would be mentally off-task 60-70% of the work week and would have absences from or interferences with work as a result of her mental impairments on a weekly basis.  AR 319.

## C.  Plaintiff's Disability Hearing

At the February 25, 2013 hearing, Plaintiff testified that despite counseling and medication she continued to suffer from anxiety and depression.  AR 28-9.  Plaintiff testified that these conditions affected her concentration, memory, and social interactions.  AR 29-31.

The ALJ asked the vocational expert ("VE") if an individual with the same age and

educational background as Plaintiff who was "limited to an exertional level in the full range of light; no ladders or scaffolds; occasional over-chest -level work; no complex tasks defined as SVP 2 or less; [and] occasional dealing with the general public" could perform any of Plaintiff's past work.  AR 39.  The VE responded that such an individual could still work in housekeeping.  *Id.*  The ALJ then asked the VE if there were other jobs such an individual would be capable of performing.  *Id.*  The VE responded that such an individual could work as a small products assembler and electronics worker.  AR 39-40.

The ALJ next asked the VE to modify his first hypothetical to include the mental RFC assessed by Mr. Harder and indicate whether such an individual would be able to engage in competitive employment.  AR 40.  The VE responded that such an individual would not be able to work standard work hours.  *Id.*  Upon questioning from Plaintiff's attorney, the VE stated that an individual who would miss one day of work per week due to mental impairments would not be able to work a regular work schedule.  *Id.*

**D.  The ALJ's Decision**

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a) & 416.920(a).  At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of August 26, 2011.  AR 10.  At the second step, the ALJ determined that Plaintiff had severe impairments of degenerative changes of the lumbar spine and cervical spine, major depression, post-traumatic stress disorder; and social phobia/personality disorder.  *Id.*  At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. *Id.*

At the fourth step of the sequential process, the ALJ determined Plaintiff had the RFC to perform light work but could not climb ladders or scaffolds, could only occasionally engage in over-chest-level work, could not perform complex tasks (*i.e.* SVP of 2 or less), and could only occasionally deal with the general public. AR 12. Based on the assessed RFC, the ALJ concluded that Plaintiff remained capable of performing her past relevant work as a housekeeping cleaner which is classified as light with an SVP of 2. AR 15. Alternatively, the ALJ concluded that there were other jobs existing in the national economy that Plaintiff was capable of performing such as small products assembler and electronics worker. AR 16. Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. AR 20.

### III. Standard of Review

In reviewing the Commissioner's decision, I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamilton, supra,* 961 F.2d at 1498. I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge." *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995).

### IV. Analysis

On appeal, Plaintiff argues that the ALJ erred (1) in failing to weigh Mr. Harder's opinions; (2) in failing to account for Plaintiff's specific mental limitations in concluding that

she was capable of performing unskilled work; and (3) by ascribing an RFC to Plaintiff that is not supported by substantial evidence in the record.

**A.   The ALJ's Treatment of Mr. Harder's Opinions**

The ALJ discussed Mr. Harder's opinions about Plaintiff's limitations but effectively rejected them because they were not consistent with the evidence as a whole; because there was no indication that Mr. Harder was familiar with the Social Security requirements for disability or the other evidence of record; and because Mr. Harder had only treated Plaintiff for 2 months before he completed Plaintiff's mental RFC evaluation.  AR 14.  Plaintiff argues that the ALJ erred because his discussion of Mr. Harder's opinions did not specifically state what weight he was attaching to them.

While it would have been preferable for the ALJ to specify the weight he was giving to Mr. Harder's opinions as he did with respect to other medical opinions, it is obvious that he considered Mr. Harder's opinions and attached little to no weight to them for the stated reasons. Under these circumstances, I am not persuaded that the ALJ's failure to assign a specific weight to Mr. Harder's opinions constitutes reversible error.  I further conclude that the reasons given by the ALJ are sufficient to support his effective rejection of Mr. Harder's opinions.

**B. The ALJ's Conclusion that Plaintiff Was Capable of Performing Unskilled Work**

By concluding that Plaintiff was only capable of performing light work with an SVP of 2 or less, the ALJ restricted Plaintiff to unskilled work.  *See* SSR 00-4P, 2000 WL 1898704 at *3. Plaintiff argues that restricting Plaintiff to unskilled work failed to account for Plaintiff's specific mental impairments.  I disagree in light of the RFC assessed by the ALJ.

"Unskilled work is work which needs little or no judgment to do simple duties that can be

learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). A restriction to "unskilled work" may but does not necessarily take into account a claimant's mental impairments. *See Chapo v. Astrue,* 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (restriction to unskilled work accounted for issues of skill transfer and not impairment of mental functions); *Wayland v. Chater,* 1996 WL 50459 at *2 (10th Cir. Feb.7, 1996) (recognizing that there may be circumstances in which a mental limitation can be so obviously accommodated by a reduction in skill level that no vocational evidence specifically addressing that limitation is necessary).

Plaintiff's argument that the ALJ erred in not specifically accounting for her mental impairments in assessing Plaintiff's RFC or in questioning the VE focuses primarily on the impairments assessed by Dr. Valette. The ALJ, however, gave "little" weight to Dr. Valette's opinions and did not, for the most part, incorporate them into the RFC he assessed for Plaintiff. AR 14.

While the ALJ did find that Plaintiff had moderate limitations in social functioning and maintaining concentration, persistence, and pace in analyzing the "paragraph B" criteria at step 3 of the sequential process (AR 11), it does not follow that the ALJ erred by not including these specific limitations in his hypothetical questioning of the VE or in Plaintiff's RFC. As explained in the regulations,

> [t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C...

*See* SSR 96-8p, 1996 WL 374184 at *4. *See also id.* at * 1("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable

impairment or combination of impairments, including the impact of any related symptoms."). Thus, numerous cases from this jurisdiction have held that an ALJ is not required to include paragraph B limitations in an assessment of the claimant's RFC or in hypothetical questioning of the VE unless it results in a functional limitation. *See e.g. North v. Colvin,* 2014 WL 1267002 at *8 (N.D. Okla. March 26, 2014); *Jones v. Colvin,* 2014 WL 3818283 at *16-7 (N.D. Okla. Aug. 4, 2014).

Here, the RFC that the ALJ assessed for Plaintiff only included functional limitations of no complex tasks and only occasional dealings with the general public. As further discussed below, Plaintiff has failed to establish that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence in the record. I therefore conclude that the ALJ did not err by not including additional functional limitations in Plaintiff's RFC or in his questioning of the VE.

**C. The ALJ's Assessment of Plaintiff's RFC**

Plaintiff argues that the ALJ erred in his assessment of Plaintiff's RFC because he did not include consistent limitations found by medical sources or explain his failure to do so. I disagree.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical or mental activities." SSR 96-8p, 1996 WL 374184 at * 2. It is assessed "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements.'" *Id.* "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional

9

capacity in question." *Chapo*, 682 F.3d at 1288.

Plaintiff's argument about the ALJ's alleged improper failure to incorporate consistent medical opinions is based on a selective reading of these opinions and the weight attached to them by the ALJ. Attaching little weight to medical opinions is equivalent to effectively rejecting them. *Chapo*, 582 F.3d at 1291. Thus, the ALJ effectively rejected Ms. Richards' opinion that Plaintiff had a GAF score of 45-50 on the basis that Ms. Richards, a social worker, does not qualify as an acceptable medical source and made observations regarding Plaintiff that were inconsistent with this assessment. AR 13. Moreover, Ms. Richards September 2011 GAF assessment for Plaintiff of 45-50 reflecting serious symptoms is inconsistent with Dr. Hardy's August 2012 assessment for Plaintiff of 51 reflecting only moderate symptoms. *Id.*

The ALJ likewise effectively rejected Dr. Valette's opinions that Plaintiff would have problems with attendance at work due to depression and pain and would probably be overwhelmed by working a normal day on the basis that these opinions were undermined by Dr. Valette's observations and other evidence in the record. *Id.* Chief among this other evidence were the perceptions of two medical sources that Plaintiff was behaving in an "extremely histrionic fashion" and "looking for disability." AR 14, 279 & 294.

The ALJ also effectively rejected Dr. Suyeishi's opinions that Plaintiff cannot deal closely with co-workers and should have only minimal interaction with the general public. AR 14. The ALJ explained that he was rejecting Dr. Suyeishi's opinions about Plaintiff's ability to interact socially because these opinions were inconsistent with the firsthand observations of medical sources who personally examined Plaintiff as opposed to Dr. Suyeishi who only reviewed the records. *Id.*

In sum, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record when the entire record is taken into account, and the ALJ adequately explained why he did not incorporate certain medical opinions into this assessment.

## V. Conclusion

Based on the applicable legal standards, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED for the reasons set forth above.


Dated: September  15 , 2014 in Denver, Colorado.

                BY THE COURT:

                 s/Lewis T. Babcock
                LEWIS T. BABCOCK, JUDGE